MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2026 ME 79
Docket:      BCD-25-275
Argued:      February 4, 2026
Decided:     August 4, 2026

Panel:       STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, AND DOUGLAS, JJ.

PENQUIS C.A.P., INC.

v.

DEPARTMENT OF ADMINISTRATIVE AND FINANCIAL SERVICES et al.

STANFILL, C.J.

[¶1]  The Maine Department of Health and Human Services (DHHS) contracts with private entities to provide medical nonemergency transportation (NET) services for individuals eligible for MaineCare or the Children's Health Insurance Program.  In 2023, DHHS conducted a competitive bidding process to award a new NET service contract for each of Maine's eight transit regions, *see* 5 M.R.S. §§ 1825-B to 1825-D (2026);[1] 18-554 C.M.R. ch. 110 (effective Apr. 22, 2010), and it ultimately awarded contracts for all eight regions to ModivCare Solutions, LLC (ModivCare).  Aggrieved bidders challenged the awards for several of the regions by bringing administrative

---

[1] Several provisions of the procurement statute have been amended since 2023, but none of those amendments are relevant to this appeal.  We thus cite the most recent version of the Maine Revised Statutes in our references to the procurement statute.

appeals in the Department of Administrative and Financial Services (DAFS), *see* 5 M.R.S. § 1825-E (2026); 18-554 C.M.R. ch. 120 (effective May 24, 1995), and then seeking judicial review in the Superior Court, *see* 5 M.R.S. §§ 1825-F, 11001(1) (2026); M.R. Civ. P. 80C. We recently rejected a challenge by Waldo Community Action Partners (Waldo CAP) to the award for Region 5, *see Waldo Cmty. Action Partners v. Dep't of Admin. & Fin. Servs.* (*Waldo CAP*), 2026 ME 13, ¶¶ 18, 40, 354 A.3d 319, and we now address a challenge by Penquis C.A.P., Inc. (Penquis CAP), to the awards for Regions 2, 3, 4, and 8. For the reasons explained below, we affirm the judgment of the Business and Consumer Docket (*McKeon, J.*) upholding the awards.

## I. BACKGROUND

[¶2] Our *Waldo CAP* opinion provides a comprehensive overview of the NET service program and the 2023 bidding process, *id.* ¶¶ 5-13, so we focus here on the facts and procedure specific to Penquis CAP's appeal. The facts are drawn from the supported findings of the DAFS appeal committee, and the procedural history is drawn from administrative and court records. *See id.* ¶ 4.

[¶3] DHHS posted a Request for Proposals (RFP) for NET service contracts in May 2023, providing instructions for bidders and setting out the

criteria by which proposals would be evaluated. Pursuant to the RFP, proposals were to be organized and scored in four sections:

- Section I – Preliminary Information (No points)
- Section II – Organization Qualifications and Experience (25 points)
- Section III – Proposed Services (50 points)
- Section IV – Cost Structure Acknowledgement (25 points)

The RFP set out various requirements for the form and structure of each section, and it warned bidders that "[f]ailure to use the outline specified in [the RFP], or failure to respond to all questions and instructions throughout the RFP, may result in the proposal being disqualified as non-responsive or receiving a reduced score."

[¶4] Penquis CAP, which was the incumbent NET service provider for Regions 3 and 4, submitted proposals for those two regions as well as for Regions 2 and 8. Across all eight regions, DHHS received about forty proposals from seven different bidders.

[¶5] The proposals were evaluated by a panel of four DHHS employees. The panelists first reviewed the proposals individually, without scoring them, and then met as a group to assign scores by consensus. With respect to section IV of the RFP, the panelists awarded the maximum score of twenty-five to any proposal that included a signed copy of a NET cost-structure-acknowledgement form. With respect to sections II and III, the panelists assigned initial

4

"mid-point" scores to any proposal that met the formal requirements of the RFP and then adjusted those scores up or down "based on the value of the proposal's responses."

[¶6] One of the panelists was a DHHS supervisor who is responsible for overseeing the NET service program. The supervisor shared his "high-level assessment" of the past performance of the incumbent NET service providers—Penquis CAP, ModivCare, and Waldo CAP—with the other panelists, but none of them reviewed any of DHHS's records regarding the providers' past performance.

[¶7] ModivCare received the highest overall score for all eight regions and, thus, was awarded the contracts. For Regions 2, 3, 4, and 8, Penquis CAP and ModivCare each received the maximum score for section II (Organization Qualifications and Experience), but ModivCare received a higher score than Penquis CAP for section III (Proposed Services).

[¶8] Penquis CAP received notice of the awards to ModivCare in October 2023 and timely requested an opportunity to challenge the awards before a DAFS appeal committee. *See* 5 M.R.S. § 1825-E(2). Penquis CAP's request was granted; the case was consolidated with Waldo CAP's appeal from the award

for Region 5; ModivCare intervened; and the presiding officer of the appeal committee scheduled a hearing for December 2023.

[¶9]  While the administrative proceedings were pending, Penquis CAP made a series of requests under the Freedom of Access Act (FOAA), 1 M.R.S. §§ 400-414 (2026),[2] for DHHS records related to the NET service program. First, in October 2023, Penquis CAP requested each of the NET service proposals that had been submitted, as well as the panelists' notes and scoresheets.  DHHS fulfilled that request in November, producing roughly 19,000 pages of documents.  Then, in November and December 2023, Penquis CAP requested all communications between DHHS and ModivCare; all communications between DHHS and any of its agents regarding COVID-19 transportation; and all NET service incident reports filed between July 2014 and November 2023 that involved either ModivCare or Penquis CAP.  DHHS partially fulfilled those requests by mid-December, but it informed Penquis CAP that it would not be possible to complete all of them in time for the appeal committee hearing, citing the size of the requests and need to redact confidential information.

---

[2] Several provisions of FOAA have been amended since 2023, but none of those amendments are relevant to this appeal.  We thus cite the most recent version of the Maine Revised Statutes in our references to FOAA.

6

[¶10]  Penquis CAP requested, and neither DHHS nor ModivCare opposed, a continuance of the appeal committee hearing from December 2023 to February 7, 2024, to allow additional time for the processing of its FOAA requests.  In January 2024, however, Penquis CAP moved to continue the hearing until all of its requests were fulfilled in their entirety.  The presiding officer, after hearing arguments from the parties, denied Penquis CAP's motion and confirmed that the hearing would begin on February 7.

[¶11]  On January 29, 2023, Penquis CAP filed in the Superior Court (Kennebec County) a complaint alleging that DHHS was in violation of its FOAA obligations and a motion for preliminary injunctive relief.  *See* 1 M.R.S. § 409.  Penquis CAP requested that the Superior Court stay the administrative proceedings.  The court (*Lipez, J.*) initially stayed the administrative proceedings, but on February 16, it lifted the stay and denied Penquis CAP's request for preliminary injunctive relief.

[¶12]  The appeal committee finally held its hearing on March 20, 21, and 22, 2024.  The committee heard testimony from the four DHHS review panelists and from executive officials at Penquis CAP and Waldo CAP.

[¶13]  In a written decision dated April 18, 2024, the committee validated each of the awards challenged by Penquis CAP and Waldo CAP.  Penquis CAP

timely filed in the Superior Court (Penobscot County) a petition for judicial review of the committee's decision. *See* 5 M.R.S. § 11002 (2026). The case was transferred to the Business and Consumer Docket in June 2024, *see* M.R. Civ. P. 131, and after briefing and oral argument, the court (*McKeon, J.*) entered an order on May 23, 2025, affirming the decision of the appeal committee. Penquis CAP timely appealed, *see* 5 M.R.S. § 11008(1) (2026); M.R. App. P. 2B(c)(1), and moved to stay the contract awards. The appellees—DHHS, DAFS, and ModivCare—did not object to the motion, and we entered a stay of the awards pending appeal.

## II. DISCUSSION

[¶14] Penquis CAP argues that the decision of the appeal committee should be vacated for two basic reasons: (1) the presiding officer's decision to hold the hearing before the FOAA requests were fulfilled denied Penquis CAP its right to a "full and fair hearing"; and (2) the committee erred in concluding that DHHS's bidding and decision-making process was not unlawful, unfair, or arbitrary and capricious.

[¶15] Because the Business and Consumer Docket acted in an intermediate appellate capacity under M.R. Civ. P. 80C, we review directly the decision of the DAFS appeal committee. *See, e.g.*, *Waldo CAP*, 2026 ME 13, ¶ 24,

354 A.3d 319; *Pine Tree Legal Assistance, Inc. v. Dep't of Hum. Servs.*, 655 A.2d 1260, 1264 (Me. 1995). We review the decisions of administrative agencies for "errors of law, factual findings unsupported by substantial record evidence, or an abuse of discretion." *Waldo CAP*, 2026 ME 13, ¶ 25, 354 A.3d 319 (quotation marks omitted); *see* 5 M.R.S. § 11007(4)(C) (2026).

## A. Penquis CAP's Claims Related to Its Freedom of Access Act Requests

[¶16] Penquis CAP argues that the appeal committee deprived Penquis CAP of its right to a "full and fair hearing" by denying its request to postpone the hearing until all of its FOAA requests were fulfilled. The source of authority for this claim has shifted over the course of these proceedings. Before the appeal committee, Penquis CAP grounded its argument in the constitutional right to due process. In the Business and Consumer Docket, however, Penquis CAP argued that the committee violated both its constitutional rights and its statutory rights under the agency procurement statute, 5 M.R.S. § 1825-E(3), and Maine's Administrative Procedure Act (APA), 5 M.R.S. § 9056(2) (2026). Penquis CAP has now dropped its constitutional argument, relying on only the procurement statute and the APA.

[¶17] The State appellees (DHHS and DAFS) argue that Penquis CAP's arguments related to the procurement statute and the APA should not be

reviewed because Penquis CAP did not raise them before the appeal committee. In general, arguments that were not raised before an agency decisionmaker may not be addressed on judicial review. *See, e.g.*, *Indus. Energy Consumer Grp. v. Pub. Utils. Comm'n*, 2024 ME 60, ¶ 29, 320 A.3d 437; *New Eng. Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58-61 (Me. 1988). We need not determine whether Penquis CAP sufficiently raised these arguments before the appeal committee, however, because they are unpersuasive in any event.

[¶18] Penquis CAP argues that it was entitled to obtain DHHS's records and to present them at the appeal committee hearing by virtue of two provisions in the procurement statute and the APA. The procurement statute provides:

> Members of an appeal committee appointed under this section shall meet at the appointed time and place in the presence of the petitioner and such individuals as the petitioner determines necessary for a full and fair hearing. The petitioner may present to the appeal committee any materials the petitioner considers relevant to the appeal.

5 M.R.S. § 1825-E(3). The APA provides that, in "adjudicatory proceedings,"

> unless otherwise limited by the agency to prevent repetition or unreasonable delay in proceedings, every party shall have the right to present evidence and arguments on all issues, and at any hearing to call and examine witnesses and to make oral cross-examination of any person present and testifying.

5 M.R.S. § 9056(2); *see also* 5 M.R.S. § 8002(1) (2026) (defining "adjudicatory proceedings").

[¶19] When interpreting statutes, our analysis begins—and in this case, ends—with the plain text. *See, e.g.*, *Waldo CAP*, 2026 ME 13, ¶ 26, 354 A.3d 319 (explaining that we construe a statute "based on its plain, unambiguous meaning unless the result is illogical or absurd" (quotation marks omitted)). The two provisions cited by Penquis CAP plainly authorize parties to *present* certain evidence at certain administrative hearings,[3] but neither says a thing about a party's ability to *obtain* evidence that it does not already possess. Indeed, as Penquis CAP acknowledged at oral argument, there is no formal discovery in administrative appeals from agency purchasing decisions, and we see nothing in the statutes that would require informal discovery by way of FOAA.[4] Thus, contrary to Penquis CAP's claim of a right to obtain any DHHS records that it deemed relevant to its appeal, the procurement statute and the

---

[3] The parties dispute whether the appeal committee proceedings constituted "adjudicatory proceedings" for the purposes of the APA. *See* 5 M.R.S. § 8002(1). We need not address that issue, however, because even if the APA applies, Penquis CAP received the process to which it was entitled.

[4] Our plain reading of the statutory text is bolstered by the fact that the procurement statute provides an expedited timeline for appeals from agency purchasing decisions. An aggrieved bidder must request an appeal "within 15 days of notification of the award," and if a hearing is granted, it must be held "within 60 days of receipt of the request for an appeal." 5 M.R.S. § 1825-E(2)-(3). Penquis CAP's claim that a hearing may not proceed until an aggrieved bidder has received any and all documents that it requested through FOAA is inconsonant with this condensed timeline.

APA entitled Penquis CAP merely to present whatever relevant evidence it already had.

[¶20]  Moreover, although the procurement statute says that Penquis CAP "may present to the appeal committee any materials [it] considers relevant to the appeal," 5 M.R.S. § 1825-E(3), it does not abrogate the *committee's* ability to determine whether the evidence is relevant to the appeal.  Here, all of Penquis CAP's outstanding requests were for DHHS's internal records regarding the past performance of NET service providers, and the DHHS panelists testified that they did not review those records as part of the 2023 bidding process.  Thus, even if Penquis CAP were somehow entitled to obtain additional evidence from DHHS, it has not shown that the records it requested were in any way relevant to its appeal.

[¶21]  Because Penquis CAP had no right under either the procurement statute or the APA to access evidence that was not already in its possession, the appeal committee neither violated the law nor abused its discretion in deciding to hold the hearing on Penquis CAP's appeal before its FOAA requests were fulfilled.  *See Waldo CAP*, 2026 ME 13, ¶¶ 26, 33, 354 A.3d 319.

12

## B.     Penquis CAP's Other Claims of Error

[¶22]   Penquis CAP also argues that the appeal committee erred in validating the contract awards to ModivCare for the following three reasons: (1) mistakes in the notes of individual DHHS panelists rendered the review process unfair; (2) the team-consensus notes do not sufficiently document how the panelists' observations were "translated" into specific point values; and (3) the panelists afforded preferential treatment to ModivCare with respect to COVID-19 transportation and past NET service performance.

[¶23]  In an appeal from an agency purchasing decision to a DAFS appeal committee, "[t]he evidence presented must specifically address and be limited to one or more of the following: A. Violation of law; B. Irregularities creating fundamental unfairness; or C. Arbitrary or capricious award."  18-554 C.M.R. ch. 120, § 3(2); *see, e.g.*, *Waldo CAP*, 2026 ME 13, ¶ 25, 354 A.3d 319.  "The party challenging the contract award has the burden of proof, and the appeals committee 'shall look for clear and convincing evidence that one or more of the [foregoing] standards . . . has been proven by the petitioner.'"  *Waldo CAP*, 2026 ME 13, ¶ 25, 354 A.3d 319 (alterations in original) (citation omitted) (quoting 18-554 C.M.R. ch. 120, § 4(1)).

[¶24]  We review the decision of the DAFS appeal committee for "errors of law, factual findings unsupported by substantial record evidence, or an abuse of discretion." *Id.* (quotation marks omitted).  We "give considerable deference to an agency's interpretations of its own regulations, and [we] may not substitute our judgment for that of the agency on questions of fact."  *Id.* (citations omitted); *accord AngleZ Behav. Health Servs. v. Dep't of Health & Hum. Servs.*, 2020 ME 26, ¶ 12, 226 A.3d 762.  Because Penquis CAP bore the burden of proof before the appeal committee, it can prevail on judicial review only by demonstrating that the record compelled the committee to find, by clear and convincing evidence, at least one ground for invalidating the awards.  *See Waldo CAP*, 2026 ME 13, ¶ 25, 354 A.3d 319; *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676.  We address Penquis CAP's three claims in turn.

[¶25]  Penquis CAP first argues that the committee was compelled to invalidate the awards based on mistakes in the individual review notes of some of the DHHS panelists.  Specifically, Penquis CAP emphasizes that one of the panelists copied and pasted her notes about Penquis CAP's proposals across the various regions, despite differences in the proposals themselves, and that there were a handful of errors in the individual review notes of the other panelists.

[¶26]  The appeal committee found that Penquis CAP identified "some irregularities" in the individual review notes, but it reasoned that those irregularities did not reflect "fundamental unfairness" because they were cured by the consensus scoring process.  We agree.  The panelists testified that when they convened as a group to score each proposal, they looked at each panelist's individual review notes, resolved any inconsistencies by referencing the proposal itself, and then reached a consensus about the scores.  There was no evidence that the minor errors in the individual review notes impacted the consensus scores at all, let alone to Penquis CAP's detriment.

[¶27]  Penquis CAP next asserts that the committee was compelled to invalidate the awards because the consensus scoring notes did not sufficiently document the panelists' rationale for awarding specific scores to specific proposals.  Penquis CAP claims that the notes do not provide "substantive information that supports the scoring," as required by the rules governing agency procurement.  *See* 18-554 C.M.R. ch. 110, § 3(A).

[¶28]  The appeal committee concluded that the panelists complied with the rules because "[t]he relative scoring weights were published in the RFP and were used in the final consensus scoring" and "[t]he information collected was sufficiently substantive to document the effort made by the reviewers and to

support their scoring." Here, too, we agree. For each proposal, the panelists left several pages of consensus notes assessing the substance of the proposal in light of the requirements set out in the RFP, and these notes offer ample support for the panelists' scoring decisions.[5] Although the notes do not indicate precisely how the panelists' qualitative observations were "translated" into point values, the panelists were not required to provide such granular detail. Nothing in the statute, rules, or RFP required as much, and, indeed, we have previously recognized that strict adherence to a mathematical formula or rubric is "inconsistent with the search for consensus." *Pine Tree Legal Assistance*, 655 A.2d at 1264; *see also Waldo CAP*, 2026 ME 13, ¶ 39, 354 A.3d 319 ("The review panel might not have had a precise rubric for its point deductions, but rigid mathematical certainty is not required.").

[¶29] Finally, Penquis CAP argues that the appeal committee was compelled to invalidate the awards based on the panelists' "disparate treatment" of Penquis CAP and ModivCare. Specifically, Penquis CAP claims that the panelists (1) credited ModivCare, but not Penquis CAP, for having

---

[5] For example, the notes for each of Penquis CAP's proposals indicate that section III "did not follow the outline of the RFP[,] including the numbering, section, and sub-section headings[,] making [the] submission difficult to review." The notes also indicate that Penquis CAP either "[d]id not address" or provided information that was "[m]inimally responsive" to various requirements in the RFP.

provided COVID-19-related transportation outside of its NET service program, and (2) did not consider Penquis CAP's success, and ModivCare's failure, in complying with corrective action plans under the prior NET service contracts.

[¶30] The appeal committee rejected Penquis CAP's claims for at least three reasons. First, ModivCare properly included information about its COVID-19 services in section II (Organization Qualifications and Experience) of its proposals, while Penquis CAP did not.[6] Second, there was evidence that the three incumbent NET service providers had addressed performance issues and complied with their corrective action plans more or less equivalently. Third, any error was likely harmless, given that Penquis CAP's claims pertain exclusively to the scoring of section II and that Penquis CAP's and ModivCare's proposals each received the maximum score for that section. Once again, we agree. Simply put, there was scant evidence in the administrative record to support Penquis CAP's claim of disparate treatment.

[¶31] In short, the administrative record did not compel the appeal committee to find, by clear and convincing evidence, any ground for invalidating DHHS's awards. Thus, the appeal committee neither erred nor

---

[6] Penquis CAP misplaced that information in section III (Proposed Services) of its proposals.

abused its discretion in validating the awards to ModivCare. *See Waldo CAP*, 2026 ME 13, ¶¶ 25, 40, 354 A.3d 319.

The entry is:

> Judgment affirmed. Stay of the decision
> awarding the contracts lifted.

---

Alfred J.F. Morrow III, Esq. (orally), Jensen Baird, Portland, for appellant Penquis C.A.P., Inc.

Aaron M. Frey, Attorney General, and Halliday Moncure, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Administrative and Financial Services

Aaron M. Frey, Attorney General, Brendan Kreckel, Asst. Atty. Gen., and Margaret Machaiek, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

A. Robert Ruesch, Esq., and Sarah K. Grossnickle, Esq., Verrill Dana, LLP, Portland, for appellee ModivCare Solutions, LLC

Business and Consumer Docket docket number APP-2024-8
FOR CLERK REFERENCE ONLY